SAMUEL EDELSTEIN, PLAINTIFF-RESPONDENT, v. HUB LOAN COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Argued May 19, 1943—Decided September 16, 1943.

For the plaintiff-respondent, *Charles N. Kors* and *Irving Edelstein*.

For the defendant-appellant, *Harry Kay*.

The opinion of the court was delivered by

CASE, J. On January 9th, 1941, the defendant, Hub Loan Company, a corporation licensed under *R. S.* 17:10–1, *et seq.,* to engage in the small loan business, loaned plaintiff, Samuel Edelstein, the sum of $190 on his promissory note. When the debt had been paid down to $83.17 and interest plaintiff defaulted in his obligation. The company brought a District Court action and paid the clerk of the court, as it was obliged to do, *R. S.* 2:32–16, the sum of $4.56, statutory fees for the issuance and service of summons. On the day fixed for trial Edelstein—defendant in that action—failed to appear although he had been duly served with process. The case was marked "no appearance." The loan company did not act upon its statutory right to file its proofs and take final judgment but permitted the borrower to resume the making of installment payments. When the balance of the note debt had been reduced to $16.88 principal and 88 cents interest the borrower paid the company the sum of $22.32, made up of the sum of the two items just mentioned and the company's disbursement of $4.56, *supra,* and was given his promissory note marked "paid." He then brought the present suit against the company alleging that it had violated the Small Loan Act by accepting the reimbursement of $4.56. He was awarded judgment for $237.17 which was the total of everything he had paid—principal, interest and the item of $4.56. The judgment of affirmance in the Supreme Court is now before us.

The recovery is rested upon *R. S.* 17:10–14:

"* * * In addition to the interest herein provided for no further or other charge or amount for any examination, service, brokerage, commission, expense fee, or bonus or other thing or otherwise shall be directly or indirectly charged, contracted for, or received, except on actual sale of the

security in foreclosure proceedings or upon the entry of judgment. If any interest, consideration or charges in excess of those permitted by this chapter are charged, contracted for, or received the contract of loan shall be void and the licensee shall have no right to collect or receive any principal, interest, or charges whatsoever, and the borrower shall be entitled to recover from the lender any sums paid or returned to the lender by the borrower on account of or in connection with the loan."

The legislature, through the years, has endeavored to steer a difficult course between, on the one hand, the necessities of the small borrower, with little or no collateral, unwelcome as a patron of the more considerable lending agencies, and on the other hand the tendency of the lenders of small loans to impose unfair charges upon the borrower. An examination of the decisions will indicate various devices by which small loan companies undertook to exact from the borrower charges that were unduly burdensome; as is illustrated by the form of the promissory note used in *Consolidated Plan of New Jersey, Inc.,* v. *Shanholtz et al.,* 7 *N. J. Mis. R.* 876; affirmed in 107 *N. J. L.* 517, *sub nom. Consolidated Plan of New Jersey, Inc.,* v. *Palkowitz et al.,* which obligated the borrower upon default to pay "all reasonable costs, including attorney's fees" and fixing the attorney's fees at fifteen per centum of the debt; an obligation that by its terms arose on mere default and not as an item of court costs taxed under statutory authority. The legislative policy, however, has been to regulate the small loan business but not to illegalize it or to bind it so closely that it may not function. This is to be remembered in construing the statute; as is also that the suit is for the recovery of a penal forfeiture for the doing of an act alleged to be prohibited by statute and that the statute is in this respect penal and as such to be strictly construed in favor of the person penalized. *Gionti* v. *Crown Motor Freight Co.,* 128 *N. J. L.* 407. It is to be noted in this connection that if accepting the reimbursement was a violation of *R. S.* 17:10–14 it was also, under *R. S.* 17:10–21, a misdemeanor on the part of the company and of any of its officers, agents and employees who participated in the act.

Looking at the facts of the instant case without at once taking the legalistic view, we observe no abuse by the company of its franchise. It was fully within its rights and was quite within the field of legitimate business practice in bringing the suit upon default by the borrower in his obligation. It went into the least technical and most inexpensive of the courts and paid out only that which it was obligated to pay in order to secure the issue and the service of summons. That disbursement, a court charge which carried no profit to the company, is the sole questioned item. The company did not, as it could have done, press to final judgment and execution. That course would have resulted, not only in embarrassment to the borrower, but in supplementary charges, all of which, including the item of $4.56, would have been legally collectible. That which was done involved the least expense to the borrower and was altogether to his advantage. Indeed, the stipulation of facts upon which the case went in did not charge the lender with having exacted reimbursement as a condition precedent to the cancelling of the debt and the return to the borrower of his note; it simply presented—and the stipulation of facts runs in the same words—that "the plaintiff gave and the defendant accepted" the money, and that upon the making of the payment the "defendant returned to the plaintiff" the promissory note and marked the indebtedness "paid."

But it is said that the receipt of the questioned item was in addition to the interest and that therefore, by the terms of the statute, the borrower may recover everything that he has paid. If the meaning of the expressions "expense fee" and "or other thing" were to be ascertained by reference to the words with which they are associated, all of which relate to matters antecedent to the suit, there would be room for argument whether court costs are within the prohibited charges. But in any event the prohibition does not apply to an "entry of judgment."

Judgment by default is of ancient practice. "When a defendant hath a day certain given him in court, and is then demandable, and being demanded doth not appear, the court thereupon give judgment against him by default. 3 *Salk.*

213." 2 *Archbold Prac.* 27. Thereafter the fixing of damages "is usually done by a writ of enquiry. As the inquest, however, is merely for the purpose of informing the conscience of the court, the court themselves may, in all cases, if they please, assess the damages, and thereupon give final judgment; 3 *Wils.* 61, 62. 2 *Id.* 372, 374. 1 *Doug.* 316,n. 4 *Taunt.* 148; and it is accordingly the practice, in actions upon bills of exchange and promissory notes, to refer it to the master to compute the amount of principal and interest due on the bill or note, without a writ of enquiry; 4 *T. R.* 275. 1 *Doug.* 316,n. 2 *Saund.* 107 a. and see 12 *East,* 420. 4 *Taunt.* 148; * * *." 2 *Archbold Prac.* 32.

Without making a detailed historical study, the progress of our own practice on defaults is sufficiently indicated by the following extracts from the practice act, Revision of 1874:

"149. Where interlocutory judgment in actions of *assumpsit* shall be entered by default against the defendant, the plaintiff may have his damages assessed by the court, or when the court is not actually in session by any judge thereof or by the clerk, unless a rule shall be entered for a writ of inquiry or assessment of damages in open court.

"150. In all actions *ex contractu,* where the damages or sum recoverable are a mere matter of calculation, or can readily be ascertained, the same may be assessed or ascertained, on judgment by default, by the court or clerk as in actions on *assumpsit.*

*        *        *        *        *        *        *

"154. * * * where the damages are assessed by the court, or a judge, or the clerk, a rule for final judgment may be entered upon filing such assessment, as of course, which judgment shall be signed and take effect as of the day when such rule is actually entered." *Rev.* 1877, *p.* 872.

The presently effective Practice Act, *R. S.* 2:27–195, provides:

"If an interlocutory judgment in an action founded on contract is entered by default, and the damages or amount recoverable are a mere matter of calculation or are readily ascertainable, plaintiff may have his damages assessed by the

court, or by a judge or the clerk thereof, if the court is not in session * * *."

The foregoing review of practice provisions relating to the higher courts reflects, *pro tanto,* the status of a default or interlocutory judgment. However short an interlocutory judgment may fall of being an actual judgment, and even though in the strictly technical sense it may not be a judgment at all, nevertheless the terminology is embedded in present as well as in ancient usage in commentaries, judicial writings and statutes. That particular step in procedure is called a "judgment" and is referred to as a judgment that is "entered." If the posture of the suit on the note was such that a judgment had been entered the requirements of the small loan statute had been met.

The practice in the District Courts of having a case marked "no appearance" on the failure of the defendant to appear on the return day, or an adjournment thereof, and of reserving the case for the subsequent filing of proof rests upon the provisions of the District Court Act. The lending company, in the suit brought by it against the borrower on his promissory note, was entitled, on the failure of the defendant to appear, to proceed on the day named for trial or on any subsequent day and have the case determined in the defendant's absence (*R. S.* 2:32–89) ; further, it could do this before the clerk (*Id.* 2:32–90) and, since the action was on a promissory note, by the filing of an affidavit (*Id.* 2:32–118). The marking of "no appearance" entered in the District Court records indicated that the defendant, as the designation implies, had not appeared and that the machinery was set for final judgment in accordance with the statute and without further opportunity to the defendant to be heard. Plaintiff, in the defendant's interest, did not file its proof for final judgment, but it was technically and meritoriously entitled to do so upon informal *ex parte* proof. The suit was thus impressed with an interlocutory judgment, comparable to cases in like situation in the higher courts.

The only question that remains is whether an interlocutory judgment is a judgment within the purview of section 14, *supra,* of the Small Loan Act. The obvious purpose of the

statute as a whole and the application of the pertinent rules of construction lead us to answer that question in the affirmative.

We conclude that the company was entitled to be reimbursed the item of $4.56 for the reason that the statutory prohibitions in the Small Loan Act (*R. S.* 17:10–14, *supra*) do not forbid costs upon the entry of judgment and that the marking of "no appearance" was an entry of judgment within the meaning of the act.

The justice of this course is also apparent upon the consideration of the amount the borrower would have been obliged to pay, according to the District Court Act, had he made tender after suit brought in order to stop the proceedings; if to the constable, on service of summons, the principal, interest and costs (*R. S.* 2:32–23)—exactly what he ultimately paid the lender—; if thereafter to the court, before judgment, the principal amount with interest plus costs up until the time of payment, including a fee of five per centum of the amount involved for plaintiff's attorney (*R. S.* 2:32–25). We are not called upon to, and do not, decide whether there is conflict between the Small Loan Act (*R. S.* 17:10–14) and the District Court Act (*R. S.* 2:32–23, 2:32–25) in these respects or, if there is conflict, which should prevail. Enough, now, to observe that atlhough there is doubt as to precisely what the Small Loan Act prohibitions include, there is no doubt that the District Court Act makes the disputed item a collectible disbursement; and, as has been shown, there is no doubt that the Small Loan Act does not prohibit the inclusion of costs on the entry of judgment.

The judgment below will be reversed.

*For affirmance*—THE CHIEF JUSTICE. 1.

*For reversal*—PARKER, CASE, DONGES, PORTER, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 9.