34 N.J. Super. 133 (1955)
111 A.2d 768
IN THE MATTER OF THE ESTATE OF JOSEPH WOZAR, DECEASED.
ALOIS WOZAR, PLAINTIFF-APPELLANT,
v.
STEPHEN WOZAR, ADMINISTRATOR OF THE ESTATE OF JOSEPH WOZAR, DECEASED, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 17, 1955.
Decided February 10, 1955.
*136 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Jerome Alper argued the cause for the appellant (Messrs. Jerome Alper and Alper, attorneys).
No appearance for respondent.
The opinion of the court was delivered by FRANCIS, J.A.D.
This appeal challenges the order of the trial court dismissing the action for failure of plaintiff to answer interrogatories.
Joseph Wozar died in Ocean County, New Jersey, on July 10, 1943. The defendant Stephen Wozar, a brother who resided in the same county, applied for and was granted letters of administration on the estate. Plaintiff's brief says that in making the application defendant represented that he was the sole heir at law and that decedent left no children. However, the petition to the surrogate does not appear in the appendix. No inventory or account has ever been filed.
On December 23, 1953 plaintiff Alois Wozar, a resident of Czechoslovakia, claiming to be the decedent's son, obtained an order requiring defendant to show cause why he should not file an account and why the letters of administration should not be revoked.
Apparently on January 8, 1954, the return date of the order, defendant through counsel advised the court that according to rumor Alois Wozar was dead. The matter was then continued on defendant's motion until March 19, 1954, and plaintiff's counsel sought further proof on the matter through the Czechoslovakian Embassy in Washington, D.C. This, of course, required investigation and the gathering of documentary proof in Czechoslovakia.
*137 In the meantime, on January 29, 1954, defendant served certain interrogatories on plaintiff's counsel having to do largely with the issue of identity. The use of interrogatories in probate proceedings is proper practice. R.R. 5:3-7; In re Blake's Estate, 33 N.J. Super. 229 (Cty. Ct. 1954); 7 New Jersey Practice (Clapp, Wills and Administration), (1950), p. 517, § 950. However, some of them dealt with collateral matters, of which more later.
On March 2, 1954 defendant served notice to dismiss the complaint for failure to furnish answers within 15 days. R.R. 4:23-6. The affidavit of plaintiff's counsel recites that a few days before March 12, the return day of the motion, he received documentary evidence from Czechoslovakia in the form of a birth record of plaintiff, a marriage certificate of decedent and plaintiff's mother, a death certificate of another son of decedent, and identification confirmation certificates made by certain residents and by the "Local National Committee" of Ruzemberok, Czechoslovakia. This material (as well as an ex parte deposition of plaintiff which was filed on October 25, 1953, prior to the institution of the action) came through the embassy at Washington.
The documents were handed to defense council for examination, but after inspecting them he insisted upon moving the motion to dismiss the complaint. On the argument, objection was made to certain of the questions as improper, but the court ordered the filing of answers to all of them within ten days. Plaintiff's attorney's affidavit, which was filed in opposition to the final motion to dismiss the complaint, recites that he explained to the court the physical impossibility of obtaining sworn answers from Czechoslovakia within that time. However, an order was entered directing that it be done not later than March 22, 1954.
In the face of the impossibility of complying with the order, answers were prepared from the material at hand and sworn to by the person holding the power of attorney from the plaintiff as the truth to the best of her knowledge and belief. The affidavit recited that the matter was being handled in this fashion because of the time limitation. The *138 answers in this form were sent by registered mail to defense counsel who received them prior to March 22. And plaintiff's attorney's affidavit says that the same answers were dispatched immediately to Wozar through the embassy to be sworn to.
On April 2 a motion was made to strike certain of the interrogatories as improper. These questions, the propriety of which is hereafter considered, were not answered even in the manner indicated. In addition, application was made for an order to take the testimony of certain persons in Czechoslovakia in order to prove the authenticity of the documents previously exhibited to defense counsel and to prove the identity and continued existence of plaintiff. The motion to strike was denied and that seeking leave to take depositions was granted. Counsel's affidavit recites that an order to this effect was mailed from his office in Newark to the trial judge but was never returned to him.
On May 28 defendant moved to dismiss the action for failure to answer the interrogatories as required by the rules and the order of the court. Decision was reserved and thereafter copies of letters from our Department of State and the Czechoslovakian Embassy indicating the difficulties in the way of handling the matter with dispatch were sent to the court. However, on August 19, 1954 the action was dismissed.
In reviewing the propriety of this dismissal our attention is first directed to the attack which was made in the trial court on certain of the interrogatories. Numbers 11, 12 and 13 inquire as to whether plaintiff is a member of the Communist Party or a communist sympathizer or a member of any communist organization. These questions are manifestly improper and irrelevant to the issue in the case and should have been stricken. The action concerns itself with the right of a son to inherit from his intestate father. His political beliefs as a citizen and resident of Czechoslovakia in the present posture of the case before us have no pertinency.
Number 14 asks if plaintiff has ever been convicted of crime and if so, for details of the nature declared to be admissible by our cases. The question is proper and should *139 be answered. Such conviction is a well-known subject of inquiry in connection with a witness' credibility. The record indicates that a number of other interrogatories will be answered. Plaintiff's veracity in connection with them may be studied in the light of any previous conviction of crime.
Moreover, it seems apparent that depositions of some sort are to be taken in order to establish the right of inheritance. Obviously Wozar is not coming to this country to appear at a trial. Under R.R. 4:16-2 an interrogatory is proper if the testimony sought "appears reasonably calculated to lead to the discovery of admissible evidence." Conviction of crime may be shown on cross-examination when the deposition is taken or it may be shown by the production of the record of conviction. N.J.S. 2A:81-12. An answer to the question may lead to the production of the record of any previous conviction as well as accurate information as to the specific crime involved and the sentence thereon. Further, such record may provide additional information as to convictions unrevealed by the answer to the interrogatory. Under the present liberal discovery policy manifested by our rules of civil practice, this additional reason exists for requiring the answer. See State v. Costa, 11 N.J. 239 (1953); State v. Fox, 12 N.J. Super. 132 (App. Div. 1951); In re Pennsylvania R.R. Co., N.J. Super. (App. Div. 1955).
Interrogatories 15, 16 and 18 request plaintiff to attach pictures of his father, mother and himself. It is argued that copies of documents cannot be obtained by interrogatories, but only under R.R. 4:24-1 which provides for the granting of leave to inspect and copy or photograph documents on a showing of good cause. Although it might have been more appropriate to proceed under this rule, we think good cause for demanding the photographs or copies thereof is exhibited by the record. They are material in connection with the problem of Wozar's identity. The handling of the matter is facilitated in this instance by the use of interrogatories. The scope of interrogatories is as broad as the permissible examination on pretrial discovery deposition, which sanctions inspection of documents not privileged under *140 the rule. R.R. 4:23-9; 4:16-2. Probably a litigant would not ask for a copy of a document under R.R. 4:24-1 unless the likelihood of its possession by the adverse party was known and could be shown to the court on the application. If such fact were not known  and on the record here that would appear to be the situation  it would seem reasonable to permit the submission of an interrogatory asking if the party has the document, such as the pictures in this instance. On an affirmative answer, a request to attach a copy in the circumstances of this case we deem to be within the scope of the rule. (For a discussion of the propriety of calling for copies of documents by interrogatories, see 4 Moore, Federal Practice (1951), § 33.22, p. 2321 et seq.)
As to the photographs of his parents, if Wozar does not have them, naturally they cannot be furnished. However, in view of the issue of identity and his non-residence in the United States, he must assume the burden of providing the photograph of himself.
Question 17 asks Wozar to place his fingerprints in the spaces provided as part of the interrogatories. Here again the issue of identity, plaintiff's non-residence and his inability or lack of intention to appear in our courts, give justification to the request and bring it within the scope and purpose of the rule.
Disposition of these incidental matters brings us to the major ground of appeal, viz., that error was committed in dismissing the action. Trial courts have wide discretion in the conduct of causes before them. Sanctions may be imposed under R.R. 4:27-2 for failure to comply with an order directing answers to interrogatories, including the dismissal of the action. R.R. 4:27-2(b) (3). Such drastic action should not be taken except in unusual circumstances which display gross inattention, carelessness or contumacy toward the order. See Lang v. Morgan's Home Equipment Corp., 6 N.J. 333 (1951); Tsibikas v. Morrof, 5 N.J. Super. 306 (App. Div. 1949).
The record before us fails to show any such conduct on the part of plaintiff or his attorneys. We find no evidence *141 of a deliberate disregard of judicial authority. There were matters which perhaps tried the court's patience. But the record plainly shows that difficulties over which the parties have very little control attend the prosecution of the action and stand in the way of the expeditious disposition which our present judicial system looks for in the ordinary case.
Our study convinces us that dismissal of the action under the circumstances presented was not justified and constitutes a mistaken use of discretion.
On the remand of the record, a reasonable time should be allowed for the verified completion of such of the interrogatories as have been sanctioned, the production in proper form of the documents necessary to the proof of the case and for the taking of any necessary depositions. But these matters must be attended to with such reasonable dispatch as the situation permits.
In this connection we note that a representative of the Czechoslovakian Embassy wrote to counsel that while the taking of depositions might not be too difficult in the United States, "in this case it seems superfluous, even luxurious, to us." In the interest of completing the matter within a reasonable time measured by the kind of case it is, all interested persons should note that the action must be conducted according to the necessary and accepted methods of proof and procedure of the courts of this state.
The judgment is reversed, costs to abide the result of the trial.