39 N.J. Super. 318 (1956)
120 A.2d 880
INTERCHEMICAL CORPORATION, A CORPORATION OF THE STATE OF OHIO, PLAINTIFF-RESPONDENT,
v.
UNCAS PRINTING AND FINISHING CO., INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1956.
Decided February 23, 1956.
*320 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Sydney Isadore Turtz argued the cause for appellant (Messrs. Cohen & Turtz, attorneys).
*321 Mr. John W. Hand argued the cause for respondent (Messrs. Evans, Hand & Evans, attorneys; Miss Serena Bowen, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals from a Law Division judgment in favor of plaintiff for $19,492.11 and costs. The matter arose out of a claim for unpaid royalties due plaintiff under its licensing agreement with defendant.
On April 1, 1952 the parties entered into an agreement whereby defendant, in exchange for a license to use plaintiff's patented compositions and methods in its textile decorating business, agreed to pay a royalty equal to six percent of "the cost of the compositions used" by it under the license. It also agreed to furnish plaintiff with a quarterly report of the cost of the compositions so used and the royalties payable. Plaintiff was given the right to examine defendant's records, defendant agreeing to
"* * * keep and preserve for a period of at least two years adequate records (including original invoices of all purchases by Licensee during the terms of this Agreement of compositions suitable for use under this license and of materials adaptable for incorporation in compositions for such use) showing the quantities and cost of (a) each composition used by Licensee under this license and (b) of each material that was incorporated by Licensee in compositions that were used by Licensee under this license, and showing also, in each case, the calendar quarter in which it was so used. * * *"
Defendant paid royalties in 1952 and 1953, but none in 1954. Plaintiff thereupon instituted this action for damages, alleging that defendant had failed to submit quarterly reports and refused to permit plaintiff to inspect and audit its records. Judgment was demanded in the sum of $20,000, together with interest and costs. Defendant's answer denied the alleged failure and refusal, or that anything was due plaintiff.
In pretrial discovery proceedings plaintiff moved for an order directing defendant to produce certain books and records. After a hearing at which defendant's attorney appeared *322 the court entered an order on September 10, 1954 requiring defendant to produce at its North Bergen Township office on September 20, for inspection and copying: (a) all books, records and papers of original entry from January 1, 1952 to date; (b) all cost and production records for the same period; (c) general books of account and such other supporting records and papers as established costs for that period; (d) original invoices of all purchases; and (e) detail sheets of last inventory, together with summaries thereof.
About six weeks later plaintiff moved for an order directing the arrest of Leo Salkind, managing director and president of the defendant corporation, for defendant's refusal to comply with the order to produce entered on September 10, 1954, and for such other relief as was appropriate under R.R. 4:27-2. The supporting affidavit of plaintiff's accountant showed that when he attended defendant's New York City office at a time designated for inspection of its records, Salkind's partner handed him a number of sheets which did not give the required information, and told him the office was strictly a sales office and there were no other records. Salkind's affidavit in opposition stated that defendant had no production records and that invoices could not reasonably be furnished plaintiff because of their volume. The court thereupon, on November 10, 1954 and in the presence of defendant's attorney, again entered an order directing defendant to produce the named records for inspection.
Following this Salkind furnished plaintiff's accountant with a record of disbursements and purchases, together with about half of the original invoices for materials subject to the licensing agreement. He flatly refused to furnish the general ledger. Plaintiff was accordingly obliged to move once more for an order compelling defendant to comply fully with the original order to produce. This time defendant's attorney consented to the entry of an order, dated February 11, 1955, directing defendant to produce at its North Bergen Township office for inspection the required books, records and documents, and extending the time for discovery. An *323 inspection of all available invoices and the general ledger followed. However, no production records were exhibited, Salkind stating that none were kept.
Thereafter, and for the purpose of discovering the facts which were not disclosed by its inspection of the disbursement and purchase records, invoices and general ledger produced under the three mentioned court orders, plaintiff propounded and served interrogatories on April 20, 1955 which, among other things, required defendant to set forth (a) reports for every calendar quarter from April 1, 1952 to date, not theretofore furnished, giving the cost of the compositions it had used under the license and the amount of royalties payable in respect thereto; (b) the royalties which defendant contended were presently due and owing plaintiff; (c) a statement of all purchases made by defendant from April 1, 1952 to date of compositions suitable for use under the license; (d) a similar statement of purchases of materials adaptable for incorporation in compositions for use under the license, and (e) if all the purchases detailed under (c) and (d) were not used by defendant under the license granted, a statement giving "specifically and in detail which purchases were not so used." After waiting more than four months for answers to the interrogatories, plaintiff on September 8, 1955 obtained an order, entered in the presence of defendant's attorney, directing defendant to answer within 30 days or suffer the suppression of its defense and the entry of judgment by default upon proof of plaintiff's damages, on notice to defendant. No answer to the interrogatories having been given within the period limited, the court on October 11, 1955 suppressed the defense and ordered plaintiff to proceed to default judgment on proof of its damages, on notice to defendant.
Notice of the hearing at which plaintiff would offer proof of damages was then served on defendant's attorney, who appeared and cross-examined plaintiff's witnesses but offered no testimony or other proof on defendant's behalf. Plaintiff's accountant testified that he had made an examination of defendant's purchases up to the middle of 1954, and of the *324 invoices for chemicals suitable for use in the patented processes, but that no production figures had been made available to him, he having been informed that the company kept none. Taking the total of purchases for each of the years in question, 1952, 1953 and 1954 (to June 30), he applied the six per cent figure to get the amount due as royalties for each year. He then deducted the royalties paid in each year and reached a net figure of $17,558.22 due plaintiff as royalties to the middle of 1954. Interest to the date of hearing (October 21, 1955), computed at $1,933.89, brought the total owing plaintiff to $19,492.11.
Defendant does not dispute the correctness of the order suppressing its defense and ordering plaintiff to proceed to default judgment upon proof of its damages, on notice. The discovery proceedings so diligently pursued by plaintiff were proper in all respects. It sought discovery and production of defendant's records for inspection and copying under R.R. 4:24; the interrogatories were propounded pursuant to R.R. 4:23. The October 11, 1955 order was clearly justified under R.R. 4:27-4 which provides that
"If a party or an officer, director or managing or authorized agent of a party * * * fails to serve answers to interrogatories submitted under Rule 4:23 after proper service of such interrogatories, the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party, or take such other action as it deems advisable."
Cf. R.R. 4:27-2(b)(3); Federal Civil Rule 37(b) and (d); Evtush v. Hudson Bus Transp. Co., 7 N.J. 167, 173 (1951); Tagliabue v. Tp. of North Bergen, 9 N.J. 32, 37 (1952); Schlossberg v. Jersey City Sewerage Authority, 15 N.J. 360, 370-371 (1954).
It may be observed that the court had authority to strike the defense and enter default judgment on September 8, 1955, without a supplemental order. However, the court, as here, will ordinarily give the offending party at least a second opportunity to comply. See Lang v. Morgan's Home Equipment Corp., 6 N.J. 333, 339 (1951); Semenya v. *325 Metals Disintegrating Co., 5 N.J. Super. 363, 364 (App. Div. 1949); cf. Tsibikas v. Morrof, 5 N.J. Super. 306 (App. Div. 1949); In re Wozar's Estate, 34 N.J. Super. 133 (App. Div. 1955).
The sanctions which a court in its discretion may thus impose are in aid of the policy which is an integral part of our present judicial system  that of affording the fullest opportunity for exploration of an opponent's case prior to pretrial conference. The discovery rules promulgated by the Supreme Court, R.R. 4:16 through 4:28, displaced what has been called the "sporting" concept of a law action which all too often characterized the former practice. They inaugurated a permanent open season on facts. The purpose of the broad discovery now provided by our rules is to give a party "a wide latitude in securing such discovery as he may need concerning the details of the evidence so that the outcome of the case will depend less upon surprise testimony and the maneuverings of counsel and more upon the merits of the issues." Tentative Draft of Rules, Rule 3:26-1 (now R.R. 4:16-1ff.), comment 2. In Lang v. Morgan's Home Equipment Corp., above, 6 N.J., at page 338, the Chief Justice summarized the overall purpose of the pretrial discovery rules:
"Liberal procedures for discovery in preparation of trial are essential to any modern judicial system in which the search for truth in aid of justice is paramount and in which concealment and surprise are not to be tolerated. [After quoting from Hickman v. Taylor, 329 U.S. 495, 500-501, 67 S.Ct. 385, 91 L.Ed. 451 (1947), wherein the purpose of the federal discovery rules, upon which ours are patterned, is discussed, he continued:] Our rules for discovery * * * are designed to insure that the outcome of litigation in this State shall depend on its merits in the light of all of the available facts, rather than on the craftiness of the parties or the guile of their counsel."
And see, generally, Schnitzer and Wildstein, New Jersey Rules Service, A IV-415 to 420.
Admittedly, the order finally entered by the court, striking the defense and directing plaintiff to proceed to default judgment, was drastic action. However, defendant *326 invited the extreme sanction by the course which it chose to pursue in the face of plaintiff's persistent efforts to get at necessary facts. The order of October 11, 1955 was a just one, for the discovery proceedings went to the very foundation of plaintiff's cause of action, and defendant's refusal to comply was deliberate and contumacious. See Lang v. Morgan's Home Equipment Corp., above, 6 N.J., at page 339; In re Wozar's Estate, above, 34 N.J. Super., at page 140; Tsibikas v. Morrof, above; Michigan Window Cleaning Co. v. Martino, 173 F.2d 466 (6 Cir. 1949); Dulin v. West, 10 Fed. Rules Serv. 37d.33, Case 1 (D.C. Mo. 1946). As to the object and operation of R.R. 4:27-4, see, generally, Schnitzer and Wildstein, New Jersey Rules Service, A IV-775ff.; compare the discussion of R.R. 4:27-2(b)(3), ibid., A IV-765ff.
R.R. 4:56-2, dealing with final judgment by default, provides:
"(b) In all other cases the party entitled to a judgment by default shall apply to the court therefor; * * * If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings with or without a jury or take such proceedings as are necessary or proper. Writs of inquiry are superseded."
Cf. Federal Civil Rule 55(b)(2). Plaintiff gave proper notice under the rule of the hearing to determine its damages.
Defendant contends that the trial court committed error in applying an incorrect measure of damages. It asserts that under the licensing agreement it was obliged to pay royalties only on the cost of the patented compositions used under the license; that the testimony offered by plaintiff dealt only with the cost of compositions purchased, and therefore plaintiff utterly failed to prove the amount due it. It now argues that the cost of compositions used contemplated that not all of the purchases would, in fact, be used in its *327 textile decorating operation; that there is a decided waste factor in the use of the chemicals in question, and there is the further factor of inventory awaiting use. Plaintiff would not be entitled to collect royalties on wasted compositions or those still part of defendant's inventory. In brief, defendant claims that the court based its judgment upon proofs that were irrelevant, immaterial or incompetent.
The taking of testimony was, in the words of R.R. 4:56-2(b), "in order to enable the court to enter judgment * * *." In Edelstein v. Hub Loan Co., 130 N.J.L. 511, 514-515 (E. & A. 1943), where the court briefly discussed the "ancient practice" of judgment by default, it was pointed out that since any inquiry into the amount of damages "is merely for the purpose of informing the conscience of the court, the court themselves [sic] may, in all cases, if they please, assess the damages, and thereupon give final judgment * * *." The trial court, in the exercise of its discretion, chose not to require plaintiff to prove the element of liability, but rather treated the default as a confession of liability. See Reilly v. Perehinys, 33 N.J. Super. 69, 72 (App. Div. 1954). Defendant was deemed to have confessed that it breached the licensing agreement by failing to pay royalties on the compositions it had used. The court, in the further exercise of the discretion conferred by R.R. 4:56-2(b), then held a hearing.
Admittedly, the only evidence offered by plaintiff related to purchases made from 1952 down to June 30, 1954. No other information was available to it, despite every effort exerted to obtain the true facts as to just how much of the compositions purchased by defendant were actually used by it under the license. Due to this failure of defendant to make discovery, plaintiff was left to prove the amount of its damages with such facts as it had to go on, namely, the cost of chemicals purchased.
The facts which would have informed the court as to what chemicals purchased by defendant were actually used by it, were uniquely within defendant's knowledge and control. It not only withheld this information from plaintiff by not *328 producing all of the necessary records, particularly those relating to production, but it deliberately chose to refrain from giving the trial court any of the information at its disposal which would have permitted a determination as to whether any credit should be allowed defendant for compositions purchased and not used, so that the royalty item might be determined with certainty. Defendant now claims, belatedly, that if in fact there were any production records, they were destroyed when its Connecticut plant burned down. We were informed at the oral argument that the defendant was a multi-million-dollar corporation. For it not to have kept production records strikes us as an exceedingly strange departure from fundamental business practice. But whether there were such production records or not, defendant could have had its production manager or some responsible employees testify as to the amount of chemicals, if any, which it did not use.
Under all the circumstances, the court was well entitled to indulge the inference that any evidence or information in defendant's possession, relating to the products used and therefore relevant to the calculation of damages, would be beneficial to plaintiff, i.e., would not repel the inference that defendant used all of the materials it had purchased. 2 Wigmore on Evidence (3d ed. 1940), § 285, p. 162, speaks of the propriety of inferring that the failure of a party to produce evidence when an opponent contends that its production would elucidate certain facts, is an indication that the facts so exposed would be unfavorable. The rule not only has the force of logic behind it, but is buttressed by the fact that "no one who withholds evidence can be in any sense a fit object of clemency or protection." Ibid., § 291, p. 186. Wigmore goes on to say that the failure to make discovery out of court gives rise to an even stronger inference. Here, as already noted, defendant not only produced no evidence at the hearing on the question of damages, but also failed to answer specific interrogatories that called for information on the basis of which such damages could be calculated with utmost particularity. In this connection, see also Series *329 Publishers, Inc. v. Greene, 9 N.J. Super. 166, 170 (App. Div. 1950); Schultz v. Hinz, 20 N.J. Super. 346, 351 (App. Div. 1952); 70 A.L.R. 1326; 5 A.L.R.2d 893; cf. State v. New York Central R.R. Co., 37 N.J. Super. 42, 50 (App. Div. 1955).
It should not pass unnoticed that defendant, under the licensing agreement, was obligated to keep and preserve adequate records for a period of at least two years. Its failure to keep such records of materials used under the license (and if it did, to produce them) deprived plaintiff of the best evidence relating to such use. And in view of the further fact that defendant refrained from offering evidence which was peculiarly within its own knowledge, it should not now be heard to complain because the trial court accepted the best available evidence, namely, evidence as to the amount of defendant's purchases of materials suitable for use under the license. The court was fully justified in making the sound inference that any evidence or information in defendant's possession relevant to the calculation of damages would be beneficial to plaintiff. Defendant must take the consequences of that inference. If the judgment does not reflect the precise amount of royalties that would have been due on the materials used by defendant, it is nonetheless reasonably enough accurate to be sustained.
The risk of uncertainty as to the amount of damages was cast upon defendant as the wrongdoer. See 1 Restatement, Contracts (1932), § 331, p. 515, comment (a). "A defendant whose wrongful act creates the difficulty is not entitled to complain that the amount of damages cannot be accurately fixed." Rynveld v. Dupuis, 39 F.2d 399, 400 (5 Cir. 1930).
The $19,492.11 judgment was within the $20,000 ad damnum demand of the complaint. Affirmed.