35 N.J. Super. 242 (1955)
113 A.2d 700
EDWARD ROSS, PLAINTIFF,
v.
GERTRUDE LOUISE ROSS, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided April 27, 1955.
*244 Mr. Samuel L. Supnick, attorney for plaintiff.
Mr. Leonard H. Savadove, attorney for defendant on complaint.
Mr. Paul A. Lowengrub, attorney for defendant on counterclaim.
GOLDMANN, J.S.C.
The parties were married on January 29, 1929. In 1939 they bought a dwelling at 32 Bettlewood Avenue, Oaklyn, N.J., for $3,500, title being taken in both names. They paid $500 in cash and assumed an F.H.A. insured mortgage held by the Oaklyn National Bank. The parties separated on May 8 or 10, 1942 when plaintiff went to live in Philadelphia where he worked for a local newspaper. He moved to Miami, Florida in 1952, obtained employment with a newspaper there, and has remained in Florida ever since. He subsequently instituted divorce proceedings in Florida against defendant; she appeared by her attorney but did not further oppose the action. On April 10, 1953 a decree was entered in plaintiff's favor.
On March 3, 1954 plaintiff filed a complaint in the Chancery Division for partition of the Oaklyn property. The *245 original answer set up by way of separate defense that plaintiff had, after the divorce, conveyed his interest in the property to defendant by deed dated July 2, 1953, duly recorded. Later, by amended answer and counterclaim defendant stated that plaintiff had agreed to turn over his one-half interest in the property to her and actually did so, and she demanded judgment of $1,407, representing arrears down to November 28, 1954 under a $12-a-week support order entered October 8, 1942 in the Domestic Relations Division of the Municipal Court, County of Philadelphia.
The pretrial order sets out the several contentions of the parties. Plaintiff demanded partition and an adjudication that the deed under which defendant claimed his interest in the property in question was a forgery. Defendant, in turn, denied plaintiff ever had any interest in the realty, his name having been included in the deed because she was informed this had to be done; that following the divorce plaintiff agreed to and did convey his interest in the property to defendant; and that in the event of partition, defendant demanded reimbursement for monies expended for maintaining and improving the property and also for arrearages due under the support order. Plaintiff denied these claims, including the alleged arrearages, and contended that the claim for arrearages could not be maintained in New Jersey because they had not been reduced to judgment in Pennsylvania.
The partition action was heard first. Defendant was represented by substituted counsel, her original counsel having been relieved as attorney by court order entered October 1, 1954. From the testimony adduced I am convinced that title was properly and with full understanding taken in both names; that plaintiff made the $500 downpayment and kept up installment payments under the mortgage until he left the marital home in May 1942, at which time $2,521.38 was due on the existing mortgage; that although there had been negotiations between the parties' Florida attorneys looking toward a conveyance of plaintiff's interest to defendant, and certain other payments by him to her, an agreement was never reached because of defendant's attitude; that the deed upon *246 which defendant relies was clearly a forgery; and that defendant's explanation as to how the deed came to be executed in Philadelphia finds no support whatsoever in the facts because plaintiff was in Miami, Florida, at the time, had never seen the deed, and had never signed it. Incidentally, defendant did not produce the notary public who allegedly took plaintiff's acknowledgment to the deed. Her story as to how she had the deed prepared and, after sending it to plaintiff's sister in Philadelphia, received it back through the mail, is totally unsupported. There will be judgment for plaintiff on the complaint.
Defendant dismissed her attorney after the taking of testimony under the complaint for partition had been completed. The court formally relieved him from any further duties. Inasmuch as defendant was unable to obtain another attorney, the court assigned counsel to represent her on the counterclaim.
Judgment for arrears having been entered in the Pennsylvania court for the sum of $1,428 as of January 11, 1955, the counterclaim was amended in open court to show that fact.
After defendant's new counsel had been given sufficient time to analyze her records of expenditures made for improvements and to arrange for the appearance of necessary witnesses, the court proceeded to take testimony under the counterclaim. Before considering this testimony, it is necessary to dispose of two questions: (1) whether a husband, a tenant by the entirety who is separated from his wife, is obligated to contribute one-half the cost of reasonable and necessary improvements to the property made by her prior to the date the parties were divorced; and (2) whether defendant was technically limited in her offers of evidence at the trial to those matters contained in her answers to interrogatories.
A tenancy by the entirety is a tenancy in common between husband and wife, for their joint lives, with the remainder to the survivor in fee. Each of them is seized per tout et non per my. It is well settled in this State that *247 where title to real property is held by husband and wife as tenants by the entirety, "the wife holds in her possession during their joint lives one-half of the estate in common with her husband, and, as between themselves, the respective rights of the parties are those of tenants in common, * * *." Nobile v. Bartletta, 109 N.J. Eq. 119, 122 (E. & A. 1931). This rule was recognized in O'Connell v. O'Connell, 93 N.J. Eq. 603 (E. & A. 1922), an action brought by the wife against the husband for an accounting of rents, issues and profits of the premises standing in both their names. The court held that ordinarily one of the rights of a tenant in common as against his co-tenant is to have an accounting of rents collected:
"The principle upon which the rule rests is that a tenant in common, in leasing the common property and in collecting the rents from the lessee, acts not only in his own right but as the representative of his co-tenants, * * *." (pages 605-606.)
The rationale of that case is equally applicable to charging one co-tenant for the cost of necessary and reasonable improvements made to the common property by his co-tenant. Since, in a tenancy in common, each tenant holds an undivided fraction of the whole of the premises, when a wife under the circumstances here present makes improvements, thereby increasing the value of the premises, she is entitled to be reimbursed by her husband in half the amount reasonably and necessarily spent by her in good faith. Cf. Pieretti v. Seigling, 134 N.J. Eq. 105, 107 (Ch. 1943), where the court held that a wife who had discharged a mortgage lien and paid a municipal assessment for a local improvement upon the common property, had a right of contribution from her husband; cf. also Hall v. Piddock, 21 N.J. Eq. 311, 313-314 (Ch. 1871), followed in Shipman v. Shipman, 65 N.J. Eq. 556 (Ch. 1904), and Keneaster v. Erb, 83 N.J. Eq. 625 (E. & A. 1914).
Plaintiff cites Moses v. Moses, 138 N.J. Eq. 287 (Ch. 1946), affirmed in part and reversed in part, 140 N.J. Eq. 575 (E. & A. 1947); Strong v. Strong, 136 N.J. Eq. 103 *248 (E. & A. 1945); Nixon v. Nixon, 100 N.J. Eq. 437 (Ch. 1927); Hood v. Hood, 83 N.J. Eq. 695 (E. & A. 1914)  all cases denying a husband's claim for improvements made voluntarily and with full knowledge of the status of the title  as authority to defeat defendant's demand for reimbursement. They are not in point; none of them deals with a tenancy by the entirety.
One cannot spell out a gift by the wife to the husband in making the improvements. He had quit the marital home to live in Philadelphia, leaving her to fend for herself. Love and affection, marital concord  all the elements that might in other circumstances support a presumption of gift  are completely absent.
There is nothing to indicate that in making the improvements to the premises in question, defendant acted in other than good faith and from necessity. The situation must be viewed from the time when the improvements were made and the then condition of the party making them. During the entire course of the improvements Mrs. Ross was separated from her husband. She admittedly had little income from outside sources. Her only asset with an income potential was the house, and it was in need of repair and improvement. She decided to divide the inside of the house into additional rooms and facilities which she intended to rent, and did rent, to boarders, and turn the front porch into an enclosed space. In making these improvements she in many instances contributed her own labor.
The improvements for which allowance will be made were both necessary and reasonable. They were necessary because the house was then in a state of incompleteness and relative disrepair, not capable of efficient use. Further, they were necessary because the renting of rooms to boarders was defendant's only means of obtaining income after her husband had left her, aside from occasional jobs as a waitress and the small support payments which eventually were discontinued.
The costs of these improvements were reasonable. They were commensurate with the purpose for which they were made. Accordingly, defendant will be compensated for *249 improvements made by her while the parties were still married, and plaintiff will be charged with one-half the cost thereof in this equitable partition. The several amounts allowed are detailed in the supplement to this opinion.
It may be observed that the only improvements considered are those made prior to the divorce; none other was testified to. We need not, therefore, deal with the question of whether a tenant in common is entitled to reimbursement for improvements made while partition proceedings are pending. Cf. 68 C.J.S., Partition, § 139(a), p. 223.
The next question for determination is whether defendant's offer of evidence should technically be limited to the matters contained in her answers to interrogatories:
"2. List and state with particularity all of the improvements, alterations, repairs and construction which was made to the lands and premises which is the subject of this suit, giving the dates as nearly as possible when such improvements were made as well as the total cost thereof.
3. Where did the defendant obtain the money to pay for the items listed in the answer to Interrogatory No. 2 and give the names and addresses of any persons or firms from whom said money was loaned, indicating that the same was a loan, giving the dates of said loans and also state whether the same was repaid either fully or in part, indicating the amount of repayment. If any of the money used was obtained by way of gift or belonged to defendant personally or was otherwise obtained, specify how obtained and give the name and address of the person from whom same was obtained."
It is admitted that in her answers to the aforementioned interrogatories the defendant failed to include therein the entire amount that she paid to and on behalf of one Joseph Hiner for the services he performed for her in the improvement of the premises. In the "Statement of Repairs and Improvements" annexed to the answer to plaintiff's second interrogatory, the amount of $300 was set forth for "Labor  Working Out Attachment  March, April, 1949 Joseph Hines (sic) * * *." During the trial defendant sought to prove that the total amount she actually paid Hiner for his services was $676. She and Hiner testified that she paid $300 to an attorney for and on his behalf to satisfy an attachment outstanding *250 against him, and that in addition, she paid him $376. The two sums covered the work performed by him in making certain improvements at her direction and request.
The statement also omitted any mention of the $223.25 paid to one John D'Anastasia for work done. The answer to the third interrogatory failed to include certain F.H.A. home improvement loans defendant obtained through the Oaklyn National Bank, the proceeds of which were used to pay, in part, materialmen and artisans who performed work in connection with other improvements.
Plaintiff contends that since the above items were not included in the answers, testimony relating to them may not properly be admitted in evidence. It would appear that our courts have not passed on the question whether a party may be limited in his proofs in strict conformity with the answers to interrogatories in a situation like this one.
Answers to interrogatories are not pleadings; they are in the nature of evidence and do not alter the pleadings. Kohler v. Jacobs, 138 F.2d 440, 441 (5 Cir. 1943). It has been said that under ordinary circumstances they should not have the effect of limiting the parties' proofs in the way that pleadings do. 4 Moore, Federal Practice (2d ed. 1950), § 33.29(2), p. 2344. However, testimony which goes beyond the answers should be received with caution. It should clearly appear that the information called for by the interrogatories had not willfully been withheld, or omitted through sheer neglect and carelessness. It may be that the answering party  as here  failed to supply the requested information by inadvertence or because he found himself disadvantageously situated in producing it. The court should also consider whether the person serving the interrogatories might possibly have been misled, or deprived of an opportunity to investigate so as to ascertain where the truth lay.
Should the court decide to receive the proffered proof, it should then proceed to assess its credibility, giving it the weight it deserves.
True, defendant did not promptly file her answers. There were strained relations between her and her then attorney, *251 through no apparent fault on his part. Her bills, checks and other records relating to payments for work and materials were many and scattered; it was obvious to the court that in her disturbed state she could not readily gather all of them together and arrange them in some semblance of order. In view of these facts the court denied plaintiff's application to strike her defenses and counterclaim and to enter judgment by default in his favor. An additional week's time was granted for filing the answers. This was not done, so that plaintiff again moved for judgment in his favor on the counterclaim. The answers were filed before the return day of the motion, and only after defendant had arranged to get from her recent attorney such answers as he had been able to prepare from the information she had given him. Unsuccessful in her efforts to engage another attorney, she finally completed and filed the answers herself. Although the court at the time had considered imposing sanctions, it will not do so in view of defendant's then relatively disturbed and helpless state.
I am convinced that the two items in question were not deliberately withheld, but rather were inadvertently omitted. It should be noted that a large number of other items were correctly given and supported by testimony at the hearing on the counterclaim. The testimony as to the Hiner and D'Anastasia items clearly and convincingly established that the work was done and paid for. Both, as indicated, relate to improvements.
A court of equity has inherent power in dealing with the substantial rights of the parties. Strictly to limit defendant's proofs to the answers to interrogatories would not, in the circumstances of the case, work essential justice. The exclusion of the Hiner and D'Anastasia items would penalize defendant by depriving her of credit for sums she actually expended in making improvements to the premises, while unjustly enriching plaintiff by giving him the benefits of the improvements.
Plaintiff has not been misled, for he never really relied on the information defendant gave him. The answer to *252 the second interrogatory shows total expenditures of $10,033.01 covering a large number of repair and improvement items. The total set forth in the answer to the third interrogatory was $1,642. Although plaintiff had this information before the hearing on the counterclaim, it appears he did nothing further with it. He investigated none of the items before trial. It was only during cross-examination of defendant and the various materialmen and artisans who contributed to the improvements that there was any inquiry into the nature of the work performed, the cost of the work, and whether the full amount thereof had been paid. And plaintiff presented no evidence whatever as to the validity of the bills and the amounts to be allowed thereon. Under the circumstances it cannot be said that plaintiff was prejudiced by defendant's failure to include the two mentioned items in her answers, or by permitting the testimony in question.
As to the failure to include certain F.H.A. loans in her answers to interrogatory No. 3, they were merely meant to show the source of the money used to pay for some of the improvements. The nature and extent of the improvements, and what was paid therefor, were incontestably established by testimony of the materialmen, artisans and defendant. Plaintiff is not prejudiced by permitting proof of the F.H.A. loans in evidence.
I do not consider that the rules relating to discovery were designed to defeat the substantial interests of justice, and therefore hold that defendant will, in the circumstances here present, not be bound strictly to the answers filed in submitting her proofs.
Defendant has paid off in full the $2,521.38 balance due under the F.H.A. mortgage on the property held by the Oaklyn National Bank from monies she borrowed from others. The record is replete with proof of such loans, practically all of them made from one source as the monthly installments under the mortgage came due. In addition to the balance of mortgage principal, she also paid a total of $990.23 for interest on the mortgage and a total of $53.70 in mortgage service charges.
*253 Defendant made every payment for labor and materials that went into the improvements on the house from the date of plaintiff's departure early in May 1942 to April 10, 1953, the date of plaintiff's Florida divorce. Plaintiff offered no proof whatsoever to negative this fact. The money for this purpose was derived from improvement loans, defendant's small earnings and other sources. The payments made by defendant for improvements which I shall allow total $5,834.18, the details being set out in the supplement to this opinion.
As noted above, arrearages under the support order have been reduced to judgment and amounted to $1,428 as of January 11, 1955, the date judgment was signed. The parties were divorced April 10, 1953. The interval between these two dates covers 90 weeks, for which period counsel agree no support should be allowed. This means that at $12 a week, the support fixed by the original Pennsylvania court order, $1,080 should be deducted from the $1,428 due under the judgment. Defendant is thereunder entitled to the difference of $348, which difference shall be a lien against plaintiff's share of the partition sale proceeds.
Counsel for defendant presented for the court's consideration a mass of receipts, memoranda and other records showing monies expended by defendant for current expenses on the property in question  repairs, taxes, insurance, water rents and the like. The court was also presented with records kept by defendant showing rents received from boarders. The records are admittedly not complete and it is impossible to arrive at an exact calculation of income and expenditures. The two figures appear to be practically in balance, so that they need not enter into the calculation of what is due from one party to the other.
Accordingly, on the partition sale defendant will be entitled to be reimbursed by plaintiff in the sum of $1,782.65, being one-half of the total payments of principal, interest and service charges on the mortgage ($3,565.31), and in the further sum of $2,917.09, being one-half of the total payments for improvements ($5,834.18). Defendant is also entitled to be paid *254 $348, representing arrears in support that should have been paid her by plaintiff. The several amounts will be liens against plaintiff's share in the partition sale proceeds.
Costs will be allowed plaintiff who was successful on the complaint, and to defendant on her counterclaim. Counsel for defendant assigned by this court will be allowed a counsel fee of $400 to be paid out of the proceeds of the partition sale upon the presentation of the order confirming that sale; and counsel for plaintiff will be allowed a fee of $250  the fees to be paid out of the respective shares of the parties in the net proceeds of the sale.
Judgment accordingly.