45 N.J. Super. 395 (1957)
133 A.2d 45
ROBERT D'AGOSTINO, ET AL., PLAINTIFFS-RESPONDENTS,
v.
FRANK SCHAFFER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 19, 1957.
Decided June 25, 1957.
*396 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. William S. Keown argued the cause for appellant (Mr. Joseph Pierce Lodge, attorney).
No appearance for respondents.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This is an appeal from a County Court judgment entered in plaintiffs' favor in an action to recover for work performed for and materials furnished to defendant under an oral agreement.
The complaint alleged that on February 1, 1956 defendant engaged plaintiffs to erect a brick fireplace and to install "Ston-o-fect" on the front of his home in Pennsauken, N.J., at a price of $1,200; that plaintiffs performed the work and furnished the materials, but defendant has refused to pay the amount due. The answer denied these allegations generally and by way of separate defense stated that any contract plaintiffs had with respect to the work was with the Acra Construction Co., Inc., and not with defendant. An amended answer set up the additional defense that the "Ston-o-fect" furnished was defective and unsatisfactory; that defendant thereupon complained to Acra, which in turn ordered plaintiffs to repair the defects; that plaintiffs failed to do so, with the result that another contractor was employed, who tore out and replaced the "Ston-o-fect."
Defendant served interrogatories. The answers were prepared and signed by plaintiffs' attorney and verified by plaintiffs themselves as true and correct in all respects. The following interrogatories and answers are noteworthy:
*397 "2. Who were the parties to the said contract?
Answer: Ralph Schaffer and Don A. DiLuigi, agent * * *.

* * * * * * * * *
7. Give the exact address of the location where the said contract was made.
Answer: Acra Construction Co., Pedricktown, New Jersey.
8. Give the names and addresses of the persons who were present at the time of the making of the said contract.
Answer: Ralph Schaffer, and Don A. DiLuigi * * *.
9. Give the names and addresses of all persons having knowledge relevant to the claim of the plaintiffs.
Answer: Don A. DiLuigi * * *. Bernard Judge * * *."
Plaintiffs Robert and Salvatore D'Agostino, trading as D'Agostino Brothers, are engaged in the general contracting business. Salvatore was the only witness produced to prove plaintiffs' case. He testified he met Ralph Schaffer, treasurer and general manager of Acra, at a time when plaintiffs were doing some work for the company. Ralph told him his brother Frank, the defendant, was building a house in Pennsauken, and suggested he see Frank about putting in a fireplace and front. He thereupon called on Frank at the construction site, looked over the job and told him the fireplace and stone effect would cost about $1,200. (At this point counsel for defendant strenuously objected to further testimony by Salvatore about the contract, because it was completely at variance with the interrogatories. The objection was overruled. Of this, more shortly.) When the witness was asked, "Did he [Frank] tell you to do the job?" his answer was, "Well, he said `when are you going to start?'"
Salvatore testified he never talked to Ralph Schaffer about the cost, but only to defendant; he had never done work for Ralph and Frank, but only for Acra. Asked who was to pay for the work on the Pennsauken house, he replied "Well, we were under the impression it was Frank Schaffer." Nonetheless, bills for the work were sent to Frank and Ralph Schaffer. The witness stated that plaintiffs were engaged to do the chimney and front work in October 1955, although the complaint gave the date as February 1, 1956.
Although Salvatore testified that he met Frank through *398 his brother Ralph, a few moments later in his direct examination he said he had met Ralph and Frank Schaffer through Don A. DiLuigi (mentioned in the answers to interrogatories), an agent who made contacts for jobs for the D'Agostinos.
Plaintiffs did not produce DiLuigi who, according to the answer to interrogatory No. 2, was one of the parties to the contract and allegedly present when it was made. Nor did they produce Bernard Judge who, as stated in the answer to interrogatory No. 9, had knowledge relevant to their claim.
Defendant testified that his home was built by Acra, a building company composed of his brother Ralph and two other men. He was not a stockholder in the company at the time of the construction but had thereafter, and before the trial, bought out his brother's interest. Admitted in evidence was the agreement between Acra and defendant and his wife, dated May 12, 1955, for the purchase of a lot in Pennsauken and a house to be built according to the attached plans and specifications at a price of $20,000. The sum of $7,000 was paid at the time the agreement was executed. Also admitted in evidence were title company certificates showing four payments made by a savings and loan association and totalling $13,000, the amount of the mortgage it had taken on the property.
Defendant testified he never had any of the work done on his own, and that Acra had the complete contract, including the fireplace and stone front, for which he had paid it $20,000. He further stated that the stone effect put on the front of the house by plaintiffs in September was faulty and incomplete; that the fireplace was not complete at the time; that he had complained to Acra about the work, and the company used other men to tear out and correct the defective construction. He never knew who D'Agostino Brothers were until he noticed the defective work.
Ralph Schaffer testified to the agreement between Acra and defendant and his wife to build the Pennsauken home for $20,000, to include the fireplace and stone front. He said that acting for Acra he and DiLuigi, as agent for *399 plaintiffs, entered into a verbal agreement in late August or early September for the construction and installation of the latter two items. After learning from his brother Frank that the work had been improperly done, he phoned and wrote plaintiffs a number of times to make good, and when they failed to do so he brought in an outside contractor, one Castagna. Castagna said he had been called in by Acra and paid a total of $589.90 by it for correcting the work.
At the close of the testimony, and after conferring with the attorneys, the trial judge reserved decision, stating he would prefer that the matter be settled. He added that there was no necessity for taking additional testimony, "although I would have liked information from DiLuigi," whose whereabouts were unknown. The matter was adjourned for more than a week, at which time defendant produced DiLuigi under subpoena. Plaintiffs' attorney objected to the case being reopened and DiLuigi heard after he had made his closing argument, and pointed out that plaintiff (apparently he referred to Salvatore D'Agostino) was not present in court. The trial judge then said that DiLuigi's testimony would be of great aid to him in arriving at a proper judgment, and that he would permit the case to be reopened, but in fairness to plaintiffs would adjourn the matter so that they could be present. On the third day of the hearing, some 2 1/2 weeks later, defendant represented to the court that although every effort had been made to have DiLuigi present, he had eluded service of a subpoena. The court refused to continue the matter until he could be produced, and thereupon delivered its oral conclusions that the contract had been entered into between plaintiffs and Frank Schaffer individually and, making allowance for the defective and incomplete work, plaintiffs should have judgment for $750. In so deciding, the trial judge said he based his opinion on Salvatore's testimony. He stated that he was not impressed with Ralph Schaffer's testimony and viewed the corporate setup of Acra "with great suspicion," feeling that the corporation was being used by defendant "to get out of paying his just debts" to plaintiffs. Nor *400 was he impressed by defendant's testimony "on account of his interest in the case."
Defendant raises five points on this appeal, alleging error in (1) permitting Salvatore D'Agostino to testify in proof of the contract; (2) not receiving DiLuigi's testimony at the first adjourned date, when he was in court; (3) disregarding defendant's testimony because of his interest in the case; (4) finding that the Acra corporation was merely a subterfuge used by defendant to avoid paying plaintiffs' claim; and (5) concluding there was a contract between plaintiffs and defendant.
The trial court was clearly in error in overruling defendant's objection to any testimony by plaintiff Salvatore D'Agostino purporting to establish the agreement which forms the basis of this action. The sworn answers to the interrogatories stated without qualification that Ralph Schaffer and DiLuigi were the parties to the contract and present at its execution, which took place at the Acra Construction Co., Inc. office in Pedricktown, N.J.; and that DiLuigi and Bernard Judge constituted all the persons having knowledge relevant to plaintiffs' claim.
The purpose of the broad discovery provided under our rules was stated at the very inception of our new judicial system in 1948 in Comment 2 to Tentative Draft Rule 3:26-1 (now R.R. 4:16-1):
"* * * a party is given a wide latitude in securing such discovery as he may need concerning the details of the evidence so that the outcome of the case will depend less upon surprise testimony and the maneuverings of counsel and more upon the merits of the issues."
Our discovery rules were intended "to inaugurate a permanent, open-season on facts, as well as the source of, and leads to, facts. In this conception, the cards-up-the-sleeve psychology was expressly repealed." 2 Schnitzer and Wildstein, New Jersey Rules Service, where the overall purpose and function of the rules is carefully annoted, pp. A IV-415-420. "Liberal procedures for discovery in preparation *401 of trial are essential to any modern judicial system in which the search for truth in aid of justice is paramount and in which concealment and surprise are not to be tolerated." Lang v. Morgan's Home Equipment Corp., 6 N.J. 333, 338 (1951) (Chief Justice Vanderbilt). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Tagliabue v. North Bergen Township, 9 N.J. 32, 37 (1952). The role of our discovery techniques "in the attainment of the just and proper disposition of an action is not less, but if anything more, important than that of the trial itself, and the bench and bar share jointly the responsibility to govern the prosecution of the action accordingly." Schlossberg v. Jersey City Sewerage Authority, 15 N.J. 360, 371 (1954).
Interrogatories to parties are an especially productive technique for discovery of relevant facts. Burke v. Central R. Co. of N.J., 42 N.J. Super. 387 (App. Div. 1956); Abbatemarco v. Colton, 31 N.J. Super. 181 (App. Div. 1954); Maraziti v. Corigliano, 29 N.J. Super. 86 (App. Div. 1953). Expertly used, they can illumine every area and corner of the litigation, and educe the fullest possible knowledge of the issues and facts before trial, so that the outcome of the litigation will depend on its merits in the light of all the available facts, rather than on the craftiness of the parties or, possibly, the guile of counsel. Lang v. Morgan's Home Equipment Corp., above, 6 N.J., at page 338.
The answers to the interrogatories in this action were either knowingly false or their preparation attended by gross carelessness or disregard of accuracy. They are so completely at odds with the testimony given by Salvatore D'Agostino that to permit the present judgment to stand would make a mockery and a shambles of our discovery procedure. When defendant's counsel objected to Salvatore's testimony seeking to establish a verbal agreement with defendant, the trial court should have refused to hear it.
Where a party furnishing answers to interrogatories subsequently obtains information which renders such answers incomplete, he is required to serve amended answers not *402 later than ten days prior to the day fixed for trial. Thereafter amendments may be allowed "only for extraordinary or compelling reasons and to prevent manifest injustice, and upon such terms as the court may direct." R.R. 4:23-12. That rule goes on to provide that "In no case shall amendments be allowed at the trial where it appears that the evidence sought to be introduced was known to the party seeking such leave, more than 10 days prior to the trial." The penalty for failure to correct, amend or supplement incomplete answers to interrogatories is the exclusion of such omitted data at the trial. See Abbatemarco v. Colton, above; Gibilterra v. Rosemawr Homes, 32 N.J. Super. 315 (App. Div. 1954), affirmed on other grounds 19 N.J. 166 (1955). Cf. Burke v. Central R.R. Co. of N.J., above. In practice R.R. 4:23-12, as well as the sanctions implicit therein, have on occasion been relaxed in the "interest of justice," both by the trial courts and by the Appellate Division, in accordance with the authority of R.R. 1:27A. Abbatemarco v. Colton, above; Barber v. Vaccaro, 32 N.J. Super. 573 (App. Div. 1954); D'Agata v. Larson, 32 N.J. Super. 323 (App. Div. 1954); Gibilterra v. Rosemawr Homes, above; Ross v. Ross, 35 N.J. Super. 242 (Ch. Div. 1955). It has been said that the factors which weigh heavily in cancelling the sanction of the exclusion of testimony at the trial for failure to comply with the rules are (1) absence of a design to mislead or conceal  as, for example, mistake, inadvertence, excusable neglect, or honest misunderstanding; (2) absence of the element of surprise if the evidence is admitted; and (3) absence of prejudice which would result from the admission of the evidence. 2 Schnitzer and Wildstein, op. cit., A IV-682; and see the Abbatemarco, Barber, D'Agata, Gibilterra and Ross cases, just cited; Atlantic Northern Airlines, Inc., v. Schwimmer, 12 N.J. 293 (1953); Evtush v. Hudson Bus Transport Co., 10 N.J. Super. 45 (App. Div. 1950). We find none of these factors present in the record before us. Although closely cross-examined as to the reason for the answers he had given to the interrogatories, considered in *403 the light of his testimony, Salvatore D'Agostino gave none that might remotely be considered as satisfactory, except to venture the suggestion, as we read it, that he meant to refer to DiLuigi as the one who made the "contact" instead of the "contract."
We find it unnecessary to pass upon the other points raised by defendant. The judgment is reversed and the cause remanded for a new trial.