53 N.J. Super. 367 (1958)
147 A.2d 556
ROBERT BRANCH, BY HIS GUARDIAN AD LITEM, WILLIAM BRANCH, WILLIAM BRANCH, INDIVIDUALLY, AND VELMA BRANCH, PLAINTIFFS-RESPONDENTS.
v.
EMERY TRANSPORTATION CO., A CORPORATION, AND CALVIN CARL, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 24, 1958.
Decided December 26, 1958.
*370 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. George Y. Schoch argued the cause for appellants (Mr. Irving H. Lewis, attorney).
Mr. William Bruder argued the cause for respondents (Mr. Donald Steinberg, of counsel).
The opinion of the court was delivered by HANEMAN, J.A.D.
Defendants appeal from a judgment of the Union County District Court entered upon a jury verdict. Defendants admitted liability; thus, the sole issue at the trial was the quantum of plaintiffs' damages. The matter is brought up on a statement of the evidence at the trial, settled by the trial court under R.R. 1:6-3.
Two grounds for reversal are urged by defendants: (1) the trial court committed prejudicial error in overruling defense objections and permitting plaintiffs to testify concerning injuries not set forth in answers to interrogatories, and (2) the verdicts are excessive.
The pertinent questions propounded by defendants in interrogatories on pretrial discovery and the answers given by plaintiffs to each are as follows:
"2. State specifically the exact nature of all of the injuries and conditions allegedly sustained by you as a result of the accident mentioned in the complaint, giving the parts of your body affected thereby.
2. Injury to the right shoulder girdle, right sacroiliac joint, injury to the left knee, as to William Branch. As to Robert Branch  multiple contusions of the body. As to Velma Branch  injury to the right neck, right shoulder, injury to the muscles of the back, *371 whip lash injury to the neck, strained muscles of the right shoulder girdle.
8. If you contend that you have not entirely recovered from any of the said injuries and conditions, state the exact nature of the injuries and conditions which you are suffering from at the present time.
8. No permanent injury as to Robert. Velma Branch still suffering from injuries to the muscles of the back. William Branch still suffering from injuries to right shoulder girdle.
9. If you contend that you have sustained permanent injuries or suffer from permanent conditions as a result of the accident, state precisely the nature of the same.
9. William  Permanent injury to shoulder girdle.
Velma  Permanent injury to muscles of the back."
At the trial William Branch (William) testified that the impact of the collision caused a hurt to his right arm and left knee. At the trial he complained of severe pain in his lower back and in his right arm and shoulder. The physician who treated William testified that he diagnosed William's injuries as strained muscles of the right forearm and shoulder and strained ligaments and muscles of the lower back. His treatment of William covered a period of less than one month. The physician testified that on his last visit, William complained of some pain in his lower back but that he (the physician) felt that further treatment was neither necessary nor beneficial.
Velma Branch (Velma) testified that she suffered injuries to her right leg, right arm and lower back. Her complaints at the trial were of a continual pain in her right leg and right arm. She denied any injury to her back, in contradiction of her prior testimony, but later re-affirmed a claim of injury to her lower back. Her treating physician initially diagnosed her ills as a strain of the muscles of the neck with pain on motion of the neck and pain in the lower back.
Velma also testified concerning the residual effect of the injuries suffered by her minor son, Robert Branch (Robert). On this score she related that Robert had been extremely nervous since the accident and was unable to sleep at night. Robert's treating physician testified that the child suffered no residual effect from his injuries.
*372 Defendants made a timely objection to the testimony at the trial on all matters which are at variance with the answers given by the parties to the interrogatories. Each objection was overruled and the parties were permitted to testify as noted above.
The discrepancies between the answers to interrogatories and the actual testimony is as follows:

 Injuries exhibited by:
Answers to Answers to Answers to Testimony of
Interrogatory Interrogatory Interrogatory treating Testimony of
#2  Original. #8  Present. #9  Permanent. physician. Plaintiffs.
WILLIAM:
Right shoulder Right shoulder Shoulder Strained Right arm,
girdle, right girdle. girdle. muscles left knee.
sacroiliac in right
joint, left shoulder and
knee. right forearm,
 strained
 ligaments and
 muscles, lower
 back.
 Present and Present and
 Permanent: Permanent:
 No further Right arm,
 treatment right
 necessary or shoulder,
 beneficial. lower back.
VELMA: Original:
Right neck, Muscles Muscles of Muscles of Right leg,
right shoulder, of back. back. back, muscles right arm,
muscles of of neck. lower back.
back. Whiplash
to neck, Present and
strained Permanent:
muscles right
shoulder Pain, right
girdle. arm, pain,
 right leg.
 Contradiction
 on pain in
 back.
ROBERT: Present and
 Permanent: Present:
Multiple None. No answer. No residual Sleepless and
contusions. effects. nervous.

*373 The jury returned verdicts of $3,011 in favor of William Branch; $1,400 in favor of Velma Branch, and $1,000 in favor of Robert Branch by his guardian ad litem.
Counsel agree that on May 16, 1958 the trial court scheduled the case for trial on June 12, 1958; that on May 19, 1958 defendants requested and plaintiffs consented to a medical examination by a physician designated by defendants; that on May 28, 1958 defendants were advised that the examination had not been accomplished; that plaintiffs asserted at that time that the failure could not be attributed to them but, rather, was attributable to defendants' physician, who was unable to schedule plaintiffs' visit earlier because of the pressure of his practice; that on May 28, 1958 the physician advised that his earliest open date was June 20, 1958, and that the cause was tried on June 12, 1958, without any motion for continuance or objection by defendants.
In support of the ruling below, plaintiffs argue first, as they did at the trial, that the facts of this case bring it within the exception to the usual rule regarding the imposition of sanctions, in that the conflicts between the testimony and the answers to interrogatories resulted from a clerical mistake in the preparation of the answers, whereby the claimed permanent injuries sustained by William and Velma were inadvertently transposed. Thus, it is argued, there is absent design to mislead or conceal.
Second, plaintiffs argue, the answer to interrogatory No. 2 above, apprises defendants of the scope of the original injuries claimed by plaintiffs, which were the same injuries as were testified to at the trial and, therefore, that there is no surprise.
Third, plaintiffs argue, if prejudice resulted to defendants the onus should not be laid at plaintiffs' doorstep because defendants did not avail themselves of the opportunity to have a physical examination made of plaintiffs prior to the trial, which permissive pretrial discovery would have made the discrepancies apparent.
*374 It is clear from an examination of the proofs adduced at the trial that there was a substantial variance between the testimony and the answers to interrogatories insofar as those matters relate to the injuries suffered by the several plaintiffs, and that plaintiffs knew or should have known of the variance more than 10 days prior to the trial.
The major issue we are asked to rule upon is whether the trial court should have imposed a sanction which would have limited plaintiffs to the proof of only those present or permanent injuries delineated in the sworn answers to interrogatories. The resolution of this problem is inextricably tied to the problem of when, if ever, the trial court may suspend the imposition of sanctions for the violation of R.R. 4:23-12, and, if the court may suspend the imposition of sanctions, whether the circumstances of the present case will justify such action.
R.R. 4:23-12 provides:
"If the party furnishing answers to interrogatories shall obtain information subsequent to the pretrial conference which renders such answers incomplete, amended answers shall be served not later than 10 days prior to the day fixed for trial. Thereafter amendments may be allowed only for extraordinary or compelling reasons and to prevent manifest injustice, and upon such terms as the court may direct. In no case shall amendments be allowed at the trial where it appears that the evidence sought to be introduced was known to the party seeking such leave, more than 10 days prior to trial."
Where there is (1) a material variance between the answers to interrogatories and the proofs attempted to be adduced at the trial, and (2) it appears that the variant data was or should have been known to the answering party at least 10 days prior to the trial, and (3) where there has been no amendment of the answer given in the interrogatory to include the new data, then the trial court should ordinarily impose the usual sanction, i.e., exclude the proffered variant testimony from evidence. D'Agostino v. Schaffer, 45 N.J. Super. 395 (App. Div. 1957). That the trial court has the power to impose sanctions for rule violations is not open to question. Evtush v. Hudson Bus Transportation Co., *375 7 N.J. 167, 173 (1951); Burke v. Central Railroad Co. of N.J., 42 N.J. Super. 387, 395 (1956). The application of sanctions is consigned to the sound discretion of the trial court, subject only to the rule that the sanction visited upon the party must be just and reasonable in the circumstances. Lang v. Morgan's Home Equipment Corp., 6 N.J. 333, 338-339 (1951). Amendments at the trial or within ten days prior thereto should ordinarily not be allowed. The rule, however, recognizes that there will arise circumstances which recommend the allowance of an amendment to the answers within the period when trial is imminent or during the course of the trial. This is in keeping with the oft-stated broad policy underlying our rules of practice, i.e., that the design of the rules is the facilitation of business and the advancement of justice, to the end that causes will be determined on the merits. R.R. 1:27A; Donnelly v. Ritzendollar, 14 N.J. 96, 105-106 (1953). That broad purpose of the rules must be read in the light of the salutary admonition that the progressive judicial policy in permitting amendments, generally, is not intended to afford a refuge to languid or dilatory litigants. See Welsh v. Bd. of Ed. of Tewksbury Tp., 7 N.J. Super. 141, 146 (App. Div. 1950). Nor should a party ordinarily be permitted the luxury of liberal amendment because his lawyer was dilatory, solely on a general plea of substantial justice. The court should not permit itself to be imposed upon. A party seeking leave to effect a tardy amendment must show circumstances which will bring him within the scope of certain recognized factors, thus establishing a basis for the proper exercise of judicial discretion. The court has and should, in proper cases, impose drastic sanctions. See, for example, Interchemical Corp. v. Uncas Printing & Finishing Co., Inc., 39 N.J. Super. 318 (App. Div. 1956), where this court affirmed the action of the trial court striking the defense for failure to comply with an order for discovery and directing plaintiff to proceed to default judgment.
Our cases recognize three factors which, if disclosed by the circumstances of the particular case, strongly urge *376 the trial court, in the exercise of his discretion, to suspend the imposition of sanctions. This rule is well stated in D'Agostino v. Schaffer, supra (45 N.J. Super. at page 402), as follows:
"It has been said that the factors which weigh heavily in cancelling the sanction of the exclusion of testimony at the trial for failure to comply with the rules are (1) absence of a design to mislead or conceal  as, for example, mistake, inadvertence, excusable neglect, or honest misunderstanding; (2) absence of the element of surprise if the evidence is admitted; and (3) absence of prejudice which would result from the admission of the evidence. 2 Schnitzer and Wildstein, op. cit., A IV-682; and see the Abbatemarco, Barber, D'Agata, Gibilterra and Ross cases, just cited; Atlantic Northern Airlines, Inc., v. Schwimmer, 12 N.J. 293 (1953); Evtush v. Hudson Bus Transp. Co., 10 N.J. Super. 45 (App. Div. 1950)."
See also In re Wozar's Estate, 34 N.J. Super. 133, 140 (App. Div. 1955).
The polestar which should guide the trial court in the exercise of his discretion is the just and expeditious disposition of the litigation on its merits. If possible, the issue should be resolved in such a manner that no injustice is visited upon any of the parties litigant. Doubts should be resolved against the offending party. In no case, however, where the proffered proofs show a material variance from the answers to interrogatories and where there has been a reliance upon the written answers which results in surprise and prejudice to the interrogator's cause, should the court admit the variant testimony into evidence and compel the interrogator to try out the cause under that evidence without affording him a reasonable opportunity to meet that new evidence. The rule last enunciated should be contrasted with the rule expressed by Buccafusco v. Public Service Elec. & Gas Co., 49 N.J. Super. 385 (App. Div. 1958), where the error complained of was that the party failed to disclose the information sought by a question asked on written interrogatories and where the interrogating party failed to pursue his right to further discovery under the rules. Here we are concerned with the disclosure of inaccurate *377 information in the sworn answers to interrogatories which the interrogating party accepted as a true statement of the facts.
The total effect of plaintiffs' argument is that defendants cannot claim error or prejudice for a condition which arose from defendants' own neglect to avail themselves of the privileges afforded by the rules governing pretrial discovery where that procedure would have cured the error of which defendants complain.
That defendants did not avail themselves of a pretrial physical examination of the parties cannot operate to bar their claim of surprise and prejudice or reduce the effect of the prejudice. We cannot conclude that defendants did not rely on these answers. It is not essential to a showing of reliance upon answers to interrogatories which are descriptive of physical injuries that the interrogator take advantage of permissive pretrial procedure in order to obtain an independent medical examination of plaintiff for the purpose of confirmation or contradiction of such purported injuries. Nor is it necessary that the propounder of the interrogatories be prepared to adduce medical testimony of the physical conditions revealed by the answers to interrogatories. Defendants are under no duty to ascertain before trial whether the answers are in fact true. A party may accept the answers given as a true statement of the knowledge of the deponent at the time the questions were answered. They may rely upon the anticipated testimony as revealed by such answers and foreswear either further pretrial physical examination or the production of independent medical testimony at the trial. The facts of each case must be separately analyzed to determine whether there was not only reliance but also surprise and prejudice in order to determine whether sanctions should have been imposed which would limit the proof to the facts disclosed by the answers to interrogatories.
There can be no real question as to defendants' surprise and prejudice when William and Velma were permitted to testify concerning permanent injuries different from *378 those which they specified in their answers to interrogatories. Velma's testimony at the trial also demonstrates the unsoundness of plaintiffs' argument concerning the transposition of the answers give in the interrogatories. She testified that she did suffer a back injury in the answer to interrogatories Nos. 8 and 9. In her testimony she at one point denied such an injury but later reverted to her claim of a back injury. The difference between the status of William and Velma, i.e., a truck driver wage earner as against a housewife, in respect to damages arising from lost earnings, is enough prejudice to warrant the imposition of sanctions.
The testimony in the case sub judice relating to the nature of the injuries and the present and future pain and disability emanating therefrom was so different and the effect thereof so much more extensive than that disclosed by the answers that it cannot be doubted that defendants were surprised and prejudiced. Defendants could not have anticipated the proof submitted and could well have been unprepared to rebut or controvert the elicited testimony by reason of the inaccurate answers. Defendants' abortive attempt to arrange for pretrial physical examination of plaintiffs, and their failure to seek a postponement of the trial lend credence to the assertion that they relied upon the answers which disclosed injuries less serious than and different from those disclosed by the testimony.
The absence of an intent by plaintiffs to mislead is no reason to ignore the basic purpose of pretrial discovery. Regardless of intent, the answers, on the particular facts here present, serve to accomplish that end. The discrepancies were so great that the trial court should have sustained defendants' objection and have limited the proof to facts disclosed by the interrogatories, or have permitted an amendment thereof on terms which would have afforded defendants a reasonable opportunity to meet the new evidence. R.R. 4:23-12; Meszaros v. Gransamer, 23 N.J. 179, 190-191 (1957). The failure to follow either of these suggested courses of action was prejudicial error and for that reason *379 the matter is reversed and remanded for a new trial as to damages alone.
At the new pretrial conference upon a remand (R.R. 4:29-7) we conceive that the trial court should permit the answers to the interrogatories to be amended to correct the mistakes so as properly to show the present and permanent injuries for William and Velma. We conceive also that defendants should then be permitted a reasonable time after service of corrected answers within which to have plaintiffs examined by a physician of their own choice. This course will avoid manifest injustice to plaintiffs which would otherwise result, and accord defendants ample opportunity to prepare their defense upon the true state of the facts.
Reversed and remanded for a new trial as to damages only, consistent with the foregoing.