RAFAEL ROMÁN MONTALVO, Plaintiff and Appellee, v. JOSÉ DELGADO HERRERA ET AL., Defendants and Appellants.

No. R-62-272.     Decided November 22, 1963.

*Rivera Zayas, Rivera Cestero & Rúa,* and *Francisco Agraít Oliveras* for appellants. *Gilberto R. Padró Díaz* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On January 3, 1957 appellee Román Montalvo suffered serious injuries while he was inspecting a building under construction within the scope of his work which he was then performing as supervisor of constructions connected with the Bureau of Permits of the Planning Board. The State Insurance Fund made an investigation of the accident. During said investigation sworn statements were given by appellee, on August 20, 1957 and by Flor Pérez Acosta on July 31, 1957. On May 9, 1958 the Fund decided that the accident was covered by the Workmen's Accident Compensation Act, declared the injured person to be totally disabled, and granted him the maximum compensation of $3,500.

The version offered by Román and Pérez when interviewed by the investigators of the State Insurance Fund as to the circumstances of the accident is very significant. Román stated that "while I was going to supervise Barceló

Marqués' construction on Llorens Torres Avenue I tried to go over a foundation wall which had several rods sticking up, then I placed my right foot on the rods and as I raised my left foot there was a straight rod, I do not know how it happened, but I completely lost my balance and in trying to hold on to the rods I slipped to one side and a rod brushed the left side of my ribs, my left shoulder, my right leg, I received a blow under my chin and I hurt the toes of my right foot without breaking the shoe, and my testicles. I felt my back burning. I got up, I noticed something queer in my back. I went to the State Fund, they filled out the papers. I was under treatment for 29 days and they took several X-rays of my back. . . ." Flor Pérez Acosta, master builder who supervised the construction that appellee was going to inspect, described the event briefly. "He was inspecting some rods that were sticking up and slipped off (*sic*) and it's a wonder he did not get killed," and he added that he received injuries caused by the rods, "he bruised his hands and the sides."

On October 29, 1958, five months and ten days after the adjudication of the State Insurance Fund, Román Montalvo appeared before the Superior Court, Arecibo Part, with a complaint against José Delgado Herrera and his insurer, Maryland Casualty Co., in which he gave an entirely different version of the facts. The third fact of the complaint says that "while plaintiff was making the inspection previously alleged and when he was crossing a ditch or gutter for the foundation, going over a plank placed across the ditch or gutter, as if it were a bridge, said plank yielded to plaintiff's weight and he suffered a fall," and he attributed the civil liability to the contractor for his negligent action in providing a defective or unsafe bridge or passage over said ditch or gutter.

The trial was set for December 29, 1958. By motion of December 17, the defendant requested that the Manager of

the State Insurance Fund be subpoenaed and bring to court the complete record of plaintiff's claim, No. Iy-25261. This motion was notified to plaintiff's counsel, who from that moment was informed of appellants' intention to use said record.

In assuming defendants' legal representation their present attorneys sent on May 5, 1961 an interrogatory to the plaintiff, and among other information they asked for the names and addresses of the witnesses whom he intended to use at the trial. About three months elapsed before the interrogatory was answered. The witnesses mentioned were Dr. Nathan Rifkinson and Flor Pérez Acosta, "and any other person who according to subsequent investigations is shown to have knowledge of the facts in controversy."

The trial was finally held on July 9, 1962, five and a half years after the occurrence of the accident. At the commencement of the hearing the following incident occurred:

"Judge: . . . Is there any witness present who has not been informed in previous interrogatories?

"Mr. Padró Díaz: None.

"Mr. Agraít Oliveras: None." (Tr. Ev. 4–5.)

Forthwith plaintiff started the introduction of the evidence and called Adelino Montalvo to the witness stand. Mr. Agraít objected to the introduction of said testimony.

"Mr. Agraít Oliveras: We object to the testimony of this witness because the plaintiff was asked in the interrogatory attached to the record and this witness who has been called to the stand is not included among the witnesses whom plaintiff informed he was going to use in support of his complaint at the trial.

"Judge: I asked counsellors whether there was any witness present who had not been named in the interrogatories.

"Mr. Padró Díaz: We made it clear in the answer those we were going to use, and any person who might subsequently be needed.

"Judge: Was there any promise of notice?

"Mr. Padró Díaz: They did not object.

"Mr. Agraít Oliveras: The answer is filed July 31, 1961 and it says the witnesses are Dr. N. Rifkinson, Flor Pérez Acosta, and any other person who according to subsequent investigations might be shown to have knowledge of the facts in controversy. This witness' testimony comes as a surprise today, because his name was not stated and the purpose of plaintiff's interrogatory was obviously to know in advance the witnesses who are going to testify to see the relation existing between him and the plaintiff. We are entitled to investigate as to the character of this citizen because otherwise we would be cross-examining motu proprio.

"Judge: The court understands that counsellor invokes the provisions of the Rules concerning interrogatories in order to make said objection. Likewise, I believe that he had the opportunity of objecting to the interrogatory and, of course, the court does not consider it as the proper answer to the question asked him, nevertheless, in the exercise of its discretion the court is going to permit the testimony and we will give it the credit it deserves. Go ahead."

Pursuant to the ruling of the court Montalvo's testimony was received, as well as that of Flor Pérez Acosta and plaintiff's own testimony. A certificate issued by Dr. Rifkinson was admitted. The defendants limited themselves to introducing in evidence copies of the testimonies presented by Pérez Acosta and Román Montalvo in the course of the investigation made by the State Insurance Fund.

The trial court gave credit to the second version offered by plaintiff. Consequently, it sustained the complaint and ordered the defendants to pay the amount of $18,000 as compensation and $2,000 for attorney's fees. Feeling aggrieved, they appealed. We granted a writ of review.

Six errors are assigned, but in view of the conclusion we have reached that the judgment should be reversed, we shall merely discuss the two assignments which lead to the reversal.

1—It is alleged that the trial court erred in completely ignoring the evidence for the impeachment of the testimony of Flor Pérez Acosta and of plaintiff Román Montalvo. To consider this error it is necessary to make a brief summary of said witnesses' testimony at the trial.

Flor Pérez Acosta testified that he called on plaintiff to inspect the steel he was going to affix in the concrete of the building under construction; that to do so he had to go over a wall about two feet high to go from the sidewalk to the building; that "there was a plank and he had to go over the wall. Then, when he placed one foot on the wall the plank faltered and then he slipped and fell on the concrete wall"; that Román *fell over the rods* and "he tried to keep his balance over the rods which were sticking out from the wall"; that the plank rested on the ground; that plaintiff slipped on the plank. Upon being asked whether he had made a sworn statement before a State Insurance Fund official, at first he denied having done so; later he admitted the possibility and acknowledged that because of the time that had elapsed he was in doubt. He was permitted to read the testimony and confronted with his failure to mention the plank, as an explanation he said that "maybe he forgot it at the time, thinking of the moment in which *he was over the rods where he fell.*" Once more he described the accident asserting that "He placed his foot on the wall, lost his balance, and the plank yielded." Pressed by defendants' counsel to justify the inexplicable absence in the sworn statement of any reference to the fact that plaintiff had slipped on the plank, he finally said: "There are things which one forgets and the mind is confused and they pass unnoticed."

Plaintiff testified that he was walking on a plank and upon putting his right foot forward to stand on the wall he lost his balance and fell into the excavation; that his body remained over the wall and his feet in the excavation; that he cannot say what was the cause of the fall; that his right

leg was on the wall and the left foot on the plank. In confronting him with the sworn statement made before the investigator of the State Insurance Fund, he stated that he was not sure of having offered it, but later, upon confronting him with investigator Negrón, he admitted that he had testified before him when he was confined in the Professional Building. Then, when an incident arose as to the contradiction between both testimonies the judge said:

"Judge: The court has heard his testimony today and the testimony read by counsellor. From said previous testimony it appears that he refers exclusively to the fact that he was unable to pass over some rods and the trouble with the rods, and now he tells about a plank. He said that he was passing over said plank to climb on the wall. *Let him explain as to said statement and the testimony offered today; said difference, because today he says there is a plank across and a wall and that there is a plank.*

Q. Explain why you did not say it on that occasion.

A. *At the time of the accident I did not remember clearly the facts in the office, nor in my house, nor anywhere else. After I came from the hospital I asked Flor how the accident had occurred.*" (Italics ours.)

As it may be concluded from a careful comparison of both testimonies, the version offered before the State Insurance Fund cannot be reconciled with the one offered at the trial. It is most significant that notwithstanding the details with which the accident was described to the investigator, the explanation offered by plaintiff as to the difference between both versions is that "I did not remember clearly the facts in the office, nor in my house, nor anywhere else," and that he depended on the information given by another person—his own witness Flor Pérez Acosta—to offer testimony. The latter, on his part, takes refuge in the inconsistencies of the mind. But could he remember the facts better five and a half years after the accident? It is undeniable that according to the first testimony defendants were not

liable,[1] because according to said statement the accident was a consequence of plaintiff's own imprudence, while the second version—which introduces a new element by the creation of a risk not mentioned till then—tends to point to the defendants, at least in part, as the interveners in the generating cause of the damage.

■ Considering all circumstances we cannot accept that the trial court admitted the last version which was plainly discredited and the motives of which were easily discernible. It is rather a question of sufficiency of evidence, of its quality, than of appreciation. But if an element of credibility of witnesses were involved, we would not hesitate to hold that the conclusion reached by the trial judge is neither the most rational nor just. The weighing of evidence is the most delicate function corresponding to a court. In so doing it should contribute with its understanding of everyday life, and with a fine scalpel perform the delicate operation of separating the different elements of the evidence and giving each its right weight. As we said in *People* v. *Luciano*, 83 P.R.R. 551, 561 (1961), "we judges should not, after all, be so naive as to believe statements which no one else would believe."

■ On the other hand, a close examination of said second version will show that it has doubtful factual validity. Probably the doctrine of the incontrovertible physical facts would be applicable. If plaintiff had placed his right foot on the wall, and his left foot slips on an unsteady plank when trying to pass over a wall, how is it possible that his body fell forwards over the rods? Even more, how could it be pos-

---

[1] We incidentally note that if the second version contained in the complaint were true, its concealment in the investigation for the purpose of deciding whether it was a compensable accident deprived the Manager of exercising his right to subrogate to obtain reimbursement of the amount of compensation granted to plaintiff and the expenses incurred in the case, as provided in § 31 of the Workmen's Compensation Act, 11 L.P.R.A. § 32. *Negrón* v. *Industrial Comm'n*, 76 P.R.R. 283 (1954).

sible for him to receive injuries from brushing against the rods which were sticking out on the wall? Do not the nature and place of the injuries indicate that plaintiff was on the wall, and that what happened was that he slipped off, as they both testified on the first opportunity they had to describe the accident? Even in cases of contradictory evidence we have stated that the function of deciding conflicts in witnesses' testimony "does not include the right to find the physically impossible," *Matos* v. *Pabón*, 63 P.R.R. 855, 862 (1944).

2—The other error refers to the admission of Adelino Montalvo's testimony which was timely objected to because his name was not furnished in the answer to the interrogatory which was notified to plaintiff. We have already made a brief description of the facts on this point.

■■ Even if Rule 33 of the Rules of Civil Procedure of 1943 did not expressly provide that a party was entitled to request and obtain the names and addresses of the witnesses of the moving party, in *Water Resources Authority* v. *District Court*, 66 P.R.R. 796 (1947), we so held in construing its provisions jointly with those of Rule 26(b) and in consideration of its purpose as one of the mechanisms furnished to the parties for the disclosure of the evidence and the preparation for the trial. It is significant that the pertinent part of Rule 26(b) referred to "the identity and location of persons having knowledge of relevant facts." In the reenactment of 1958, Rule 30, related to interrogatories, not only permits obtaining information as to the identity and address of persons who may have knowledge of the facts, but also specifically permitted the request for "a list of the witnesses which the party interrogated proposes to use at the trial." *Discovery of Names of Trial Witnesses*, 21 F.R.S. 861 (1955); 4 Moore, Federal Practice 1077 (2d ed.). Among other things the taking of depositions of witnesses who are

actually intended to be used at the trial is afforded, and the opportunity is provided for the disclosure of any circumstance which may be used to discredit or impeach their testimony. Hence, the importance of nonevasive answers, because, as we said in *Shell Co.* v. *District Court*, 73 P.R.R. 413 (1952), the disclosure of the evidence "is available to prevent either party to a suit from holding back any of the relevant facts until trial," for, as it was said in *Hickman* v. *Taylor*, 329 U.S. 495, 507 (1947), "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Cf. Four Brothers Corporation* v. *Cordero*, 277 F.2d 777 (1st Cir. 1960).

■■ In *Peña* v. *Heirs of Blondet*, 72 P.R.R. 8, 12 (1951), one of the parties objected to permitting the testimony of several witnesses whose names were not included in the list furnished by plaintiffs when they answered the interrogatories. We did not sustain the assignment of error because evidently no prejudice was caused since when they sought to offer their testimony the court merely consented that said witnesses give their names and addresses and did not permit them to testify until several days later, when the trial was resumed. Besides, we considered that in the answer to the interrogatory notice was given of the existence of the witnesses although it was stated that because they were so numerous they could not be identified, and although it was notified the interested party did not request, prior to the trial, the names of the additional witnesses. The circumstances present in the case at bar are clearly different. When the objection to the admission of Adelino Montalvo's testimony was raised, the court did not adopt the only measure which would have protected the appellant party, that is, not permitting at that time the introduction of the unexpected testimony, but limited itself to invoking its discretion and considering the question as one of credibility, an evidently erroneous criterion. On the other hand, the answer to the

interrogatory had not informed appellant of the existence of other witnesses, but it had merely indicated that they intended to use "any other person who according to subsequent investigations might be shown to have knowledge of the facts in controversy." Under such circumstances it was not incumbent on defendants to request the names of the additional witnesses. Properly speaking plaintiff was bound to furnish the information as soon as he had knowledge of the existence of the witness, and sufficiently in advance of the trial to permit defendants to take the appropriate steps which they deemed necessary. The most elementary sense of what constitutes fair play so demanded. 4 Moore, *op. cit.* at 1080.

■ But there is more. There are clues in the evidence that show that plaintiff knew at all times of the existence of this witness. In testimony offered on August 20, 1957—eight months after the accident—when asked: "What witnesses do you have for the case?" he answered: "Flor Pérez, the master builder, *and other workers.*" The following dialogue during witness Montalvo's testimony is most revealing:

"Q. When did plaintiff tell you or who told you that you had to come here today?

"A. A long time ago, since his accident, *when he was in the hospital* [July 1957], I had seen him." (Italics ours.)

■ Barron and Holtzoff in 2-A Federal Practice and Procedure 388–389, § 777-1, comment on the continuing nature of the obligation to answer the interrogatories—a rule which we expressly adopted in the construction of our Rule No. 30 in force—as follows:

"Not infrequently it will happen that an answer to an interrogatory, though full and truthful to the best of the party's knowledge at the time it is made, will become incomplete or misleading in the light of information he later discovers. Is he under any duty to amend his answer and advise the party who submitted the interrogatory of his new information?

"The earliest cases seemed to recognize a moral duty, but this does not fully meet the necessities of the situation. Subsequently it was recognized that the court, in requiring a party to answer an interrogatory, may provide expressly that the interrogated party is under a continuing duty to amend his answer in the light of any new information. Other decisions held that the party himself may make the interrogatories continuing by so providing in a preamble to the interrogatories, though one court added the novel, and seemingly undesirable, limitation that this cannot be done generally for all interrogatories, but only with regard to those interrogatories which by their very nature should require continuing answers, or where the information available at pre-trial would not afford the party sufficient time and opportunity to prepare his case.

"Finally some courts took the ultimate step and held that even where the interrogatories are not expressly made continuing, either by a provision added to them by the proponent or by court order, there is nevertheless a continuing obligation to communicate any new information obtained by the party examined. This result appears desirable. For a party to sit idly by, knowing that a previous answer he has given to an interrogatory is not truthful in the light of his present information, is intolerable. *It is inconsistent with the purpose of the rules to avoid surprise, and it is inconsistent with the standards expected in a learned and honorable profession.* Failure of a party to give his opponent the added information should be ground for refusing to allow an unnamed witness to testify, or for granting a continuance, or for a new trial, as may seem just." (Italics ours.)

■ See, *Gebhard* v. *Niedzwieck*, 122 N.W.2d 110 (Minn. 1963); *Dempski* v. *Dempski*, 187 N.E.2d 734 (Ill. 1963); *D'Agostino* v. *Schaffer*, 133 A.2d 45 (N.J. 1957); *Abbatemarco* v. *Colton*, 106 A.2d 12 (N.J. 1954); *Smith* v. *Acadia Overseas Freighters, Ltd.*, 120 F.Supp. 192 (E.D. Pa. 1953); cf. *Fedors* v. *O'Brien*, 188 N.E.2d 739 (Ill. 1963); *The "Continuing" Nature of Discovery Techniques*, 42 Iowa L. Rev. 579 (1957). Thus, we hold that the disclosure of the evidence which the rules authorize imposes the duty to ensure that

the responses are truthful as of the time of initial discovery as well as of the time of trial.[2]

As we pointed out previously, plaintiff knew, since the commencement of the suit, that the Manager of the State Insurance Fund had been summoned with the record which contained the statements of plaintiff and his witness Flor Pérez which presented a version incompatible with the facts alleged in the complaint. The impeachment because of previous contradictory statements could be anticipated. This gave rise to the necessity of producing a witness who had not testified in the preceding investigation.

Under said circumstances the elimination of Adelino Montalvo's testimony was in order.

The judgment rendered by the Superior Court, Arecibo Part, on July 18, 1962 will be reversed and the complaint dismissed.

---

[2] Said duty is even more evident in the present case in which by stipulation of the parties signed after the answer to the interrogatories, the celebration of the preliminary conference was dispensed with. *Joseph Toker, Inc.* v. *Cohen*, 169 A.2d 838 (N.J. 1961).

We do not believe either that the provision of Rule 30 which does not limit the number or group of interrogatories which may be notified, may preclude the solution stated, because obviously such provision refers to the purpose of permitting the investigation of facts not covered by previous interrogatories.